UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Criminal No. 23-cr-00082 (TSC)** |
| | : | |
| **CHIDI OLUJIE,** | : | |
| | : | |
| and | : | |
| | : | |
| **JESSICA NORTEY** | : | |
| Defendants. | : | |

**GOVERNMENT'S MOTION TO ADMIT EVIDENCE AS INTRINSIC EVIDENCE OR, IN THE ALTERNATIVE, AS OTHER CRIMES EVIDENCE
<u>PURSUANT TO FEDERAL RULE OF EVIDENCE 404(B)</u>**

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, hereby moves *in limine* for a ruling on the admissibility of the evidence as described herein as intrinsic to the offenses with which the defendants are charged. In the alternative, should the evidence discussed below not be considered to be intrinsic, the government hereby provides notice of its intent to introduce this evidence pursuant to FED. R. EVID. 404(b) and respectfully requests that the Court issue a pre-trial evidentiary ruling on its admissibility. The evidence disclosed in this notice would still be admissible under that Rule as it would be offered to show Defendants' motive, intent, preparation, plan, knowledge, and lack of mistake or accident in the scheme to launder the proceeds of various fraud schemes, including those committed online, and keeping a share of approximately 5-10% of the proceeds. *See* FED. R. EVID. 404(b)(2).

Although the Government is providing certain descriptions and specific examples of such evidence in this notice, this filing is intended to satisfy the Government's obligation under Rule 404(b) to provide notice of the "general nature" of the crimes, wrongs, or other acts evidence that

1

the Government intends to admit at trial, and is not an exclusive list of the specific pieces of evidence that the Government may admit in support of these areas of activity.  FED. R. EVID. 404(b)(2)(A).  The defendants should also be on notice that all evidence produced to the defendants, as well as all statements disclosed during discovery, may be offered in the trial of this case, as intrinsic evidence or under Rule 404(b).  Further, because the Government continues to investigate additional allegations of wrongdoing and the review of the evidence is ongoing, the Government reserves the right to supplement and amend this notice as pre-trial investigatory developments dictate.

In support of its motion, the United States relies on the following points and authorities, and such other points and authorities as may be cited at a hearing on this motion.

## FACTUAL BACKGROUND

On March 14, 2023, a federal grand jury in the District of Columbia returned an indictment against the defendants, Chidi Olujie ("Olujie") and Jessica Nortey ("Nortey"), on counts of Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h) (2023); and Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1) (2023).  The indictment arises from the defendants' operation of a series of bank accounts from 2016 through 2019 to receive and launder the proceeds of fraud schemes, and use, without lawful authority, means of identification of other persons.  The case had previously been scheduled for trial in April 2026.[1]

## EVIDENCE OF OTHER CRIMES, WRONGS, OR ACTS

Through this motion, the Government provides notice of its intent to admit evidence pertaining to three broad categories of information: Category A – Additional Money Laundering

---

[1] On February 26, 2026, counsel for Defendant Olujie contacted the government and indicated that she would be filing a motion to continue on account of the evidence the government has identified in this motion.  The government has indicated that it would consent to the continuance.  The government has also communicated with counsel for Defendant Nortey, who has indicated that he will not oppose the motion.

Activity, Bank Fraud, and Wire Fraud; Category B – Olujie's Possession of Fraudulent Passports, and Category C – Olujie's Use of Fraudulent Credit Cards. Each category is discussed in turn below.

### A. Category A: Additional Money Laundering Activity, Bank Fraud and Wire Fraud

Between 2016 and their arrest in 2024, the defendants, along with several unindicted co-conspirators and other third parties, engaged in a series of fraud schemes from which they derived substantial proceeds that they then laundered. The indictment identifies the defendants laundering funds derived from the victims of four separate fraud schemes. However, there were multiple additional victims of various fraud schemes during the charged time frame, and the proceeds from those victims were similarly routed to the defendants. These additional victims include, but are not limited to: Victim "M.R.," who was defrauded of approximately $178,000, of which approximately $14,000 was routed to a bank account controlled by Nortey in 2017; and Victim "S.T.," who was defrauded of approximately $50,000, of which approximately $6,000 was routed to a bank account controlled by Olujie in 2019 and $1500 to an account controlled by Nortey in 2019.

### B. Category B: Olujie's Possession of Fraudulent Passports

On or about October 11, 2018, Olujie travelled into the United States after a visit to Nigeria, and upon his return was subject to a secondary search by Customs and Border Protection ("CBP") at Dulles International Airport. CBP's search of Olujie's belongings identified approximately 5 passports in his luggage which were purportedly issued by the governments of Ghana, Kenya, Mali and South Africa for individuals other than Olujie. Analysis of the passports later determined that they were all fraudulent, and not issued by the governments of the purported countries of issue. In post-search interviews, Olujie claimed that an acquaintance in Nigeria had asked him to transport

the passports, and admitted that he was aware he was transporting the passports, but denied knowing that the passports were fraudulent.

C. Category C: Olujie's Use of Fraudulent Credit Cards

Between approximately 2024 and 2025, on numerous occasions, Olujie paid the rent for his personal residence using credit cards that were issued in the names of victims B.T. and J.C. Olujie also used the cards for personal purchases from businesses in the vicinity of his residence, and purchases from businesses he owned and operated. Victims B.T. and J.C. both indicated that their identities were stolen, and that although the credit cards were in their names, they had not applied for them and were unaware of the charges.[2]

## ARGUMENT

I. **OTHER CRIMES EVIDENCE IS ADMISSIBLE AS INTRINSIC EVIDENCE**

The evidence in Category A and Category B of this motion constitutes intrinsic evidence of the defendants' conspiracy and criminal activity.

As the D.C. Circuit has explained, "Generally intrinsic evidence includes 'act[s] that [are] part of the charged offense' or 'some uncharged acts performed contemporaneously with the charged crime … if they facilitate the commission of the charged crime.'"[3] *United States v. Bell*,

---

[2] The government will disclose the underlying materials related to Olujie's participation in the credit card fraud scheme shortly after the filing of this motion.

[3] The D.C. Circuit previously mirrored its sister circuits in articulating the standard for intrinsic evidence by observing, "Evidence of criminal activity other than the charged offense is not considered extrinsic if it is an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, if it was inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime of trial." *United States v. Badru*, 97 F.3d 1471, 1474 (D.C. Cir. 1996) (quoting *United States v. Weeks*, 716 F.2d 830, 832 (11th Cir. 1983)). However, in *United States v. Bowie*, a panel expressed skepticism about the term "inextricably intertwined" as unhelpful and circular and criticized the term "complete the story" as overbroad, despite its use in other circuits. 232 F.3d 923, 928 (D.C. Cir. 2000). In *United States v. Gooch*, another court in this District rejected the argument that *Bowie* represented a new and narrower test in the D.C. Circuit for intrinsic evidence. 514 F. Supp. 2d 63 (D.D.C. 2007). The court in *Gooch* noted that "a single panel cannot reverse [the] circuit precedent" established in *Badru*, 97 F.3d at 1474-75, *United States v. Washington*, 12 F.3d 1128, 1135 (D.C. Cir. 1994), and *United States v. Allen*, 960 F.2d 1055, 1058 (D.C. Cir. 1992), in which the D.C. Circuit ruled that uncharged acts which are

795 F.3d 88, 100 (D.C. Cir. 2015) (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)); *see also United States v. McGill*, 815 F.3d 846, 879 (D.C. Cir. 2016) (approvingly quoting *Bowie,* 232 F.3d at 929); *United States v. Moore*, 651 F.3d 30, 63 (D.C. Cir. 2011) (approvingly quoting *Bowie,* 232 F.3d at 929); *United States v. Alexander*, 331 F.3d 116, 126 (D.C. Cir. 2003) ("[I]f evidence is offered as direct evidence of a fact in issue, not as circumstantial evidence requiring an inference regarding the character of the accused, it is properly considered intrinsic.") (internal quotations omitted); *United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996) ("[A]cts are intrinsic when they are inextricably intertwined or [the] acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged.") (internal quotations omitted).

Evidence of uncharged acts that tend to prove the existence of a charged conspiracy and / or scheme is admissible as direct evidence of the charged offense. *See United States v. Lorenzana-Cordon*, No. 03-CR-331-13 (CKK), 2018 WL 10373745, at *5 (D.D.C. Jan. 18, 2018) ("Where the crime charged is conspiracy, evidence closely related to the conspiracy alleged in the indictment is admissible as intrinsic evidence"); *see also United States v. McGauley*, 279 F.3d 62, 72-73 (1st Cir. 2002) (evidence that defendant fraudulently obtained 217 refund checks in uncharged transactions was directly relevant to 3 counts of mail fraud because it tended to prove existence of "*a scheme* for obtaining underserved refunds" and "was part and parcel of the charged

---

"inextricably intertwined" with the charged offenses are intrinsic to the charged offenses and exempt from an analysis under Federal Rule of Evidence 404(b). *Gooch*, 514 F. Supp. 2d 63 at 69-70. *Bowie* also concerned factually distinguishable circumstances, where the defendant was charged with a single instance of possession of counterfeit currency, and the government introduced evidence of a prior occasion on which the defendant possessed counterfeit currency—which is far different from the conspiracy charged in this case. *See* 232 F.3d, at 927-28. Nonetheless, subsequent D.C. Circuit panel decisions have approvingly quoted *Bowie*'s standard for intrinsic evidence. *See United States v. McGill*, 815 F.3d 846, 879 (D.C. Cir. 2016); *United States v. Bell*, 795 F.3d 88, 100 (D.C. Cir. 2015); *United States v. Moore*, 651 F.3d 30, 63 (D.C. Cir. 2011); *but see United States v. Mahdi*, 598 F.3d 883, 890-91 (D.C. Cir. 2010) (finding no error in admission of testimony regarding evidence of uncharged instances of violence by defendant in VICAR and RICO case, characterizing testimony as "intrinsic evidence" of defendant's "organizational control"). The government here conservatively notes the decision in *Bowie* but does not concede that it has entirely supplanted the standard articulated in *Badru* for admission of other-crimes evidence that is intrinsic to the charged offenses.

5

scheme") (emphasis in original), *United States v. Parker*, 553 F.3d 1309 (10th Cir. 2009) (finding no error in admission of three uncharged sales of faulty aircraft engines during period of charged conspiracy to sell other faulty aircraft engines because the uncharged transactions were "intrinsic to the crime and substantiate[d] the criminal conspiracy"), *United States v. Powers*, 168 F.3d 741, 749 (5th Cir. 1999) (evidence of uncharged transactions was "intrinsic" because it "tend[ed] to show the conspiratorial relationship" between the defendant and his co-conspirator), *United States v. Diaz*, 878 F.2d 608, 614-15 (2d Cir. 1989) (evidence of a cocaine seizure predating period of charged conspiracy was directly relevant because it supported the inference connections between a stash house, pay phone, and the charged cocaine conspiracy). In cases involving ongoing conspiracies or schemes, courts have found that evidence of uncharged conduct involving the same individuals can be intrinsic evidence of the charged offenses. *See, e.g.*, *United States v. Madrid*, 610 F. App'x 359, 384-85, 2015 WL 3875435, at *19 (5th Cir. June 24, 2015) (unpublished) (in conspiracy to defraud the United States by fraudulently procuring federal funds, evidence that conspirators bribed a judge was "inextricably intertwined" with conspiracy and showed the "conspiratorial relationship" and "relevant contextual evidence regarding the nature and extent of the conspiracy").

    (A) <u>Category A (Additional Money Laundering) Is Admissible as Intrinsic Evidence</u>

The evidence discussed in Category A above shows that the defendants maintained ongoing conspiratorial relationships with each other and with other co-conspirators engaged in schemes to defraud victims and route the money to the defendants' bank accounts. This evidence is directly relevant to the counts charged in the indictment.

As stated in the indictment, the goal of the money laundering conspiracy was for the defendants and their co-conspirators to "unlawfully enrich themselves by laundering the proceeds

of various fraud schemes, including those committed online, and keeping a share of approximately 5-10% of the proceeds." ECF No. 1 at 3. The money laundering conspiracy charged in the indictment requires the Government to prove that the defendants agreed with one another to engage in transactions the purpose of which was to either conceal the proceeds of a specified unlawful activity and / or to promote the specified unlawful activity.

The defendants' joint participation in additional schemes in which they were responsible for receiving and transferring proceeds of fraud schemes from other victims goes to show their ongoing relationship with one another, the ways in which they work together in the service of common objectives, and their joint knowledge that the monies they are handling are the proceeds of specified unlawful activities and are not from legitimate, non-criminal, activity. As such, this evidence is appropriately admitted as direct evidence, rather than as indirect evidence under 404(B) to show, *inter alia*, the defendants' knowledge of the specified unlawful activity and active participation in the conspiracy.

B. Category B (Possession of Fraudulent Passports) Is Appropriately Admitted as Intrinsic Evidence

Category B describes Olujie's possession of 5 fraudulent passports in 2018, and his attempt to bring them into the United States. The possession of these fraudulent passports occurred during the pendency of the charged conspiracy, which includes the defendants' laundering of funds received from the victims of wire fraud, and the transfer of funds to the defendants' accounts even though the victims had been told they were going to other parties, such as the putative paramours for in the "romance scam" instances. For example, as referenced in the indictment, victim J.B. made numerous transfers of funds to Olujie and Nortey's bank accounts which were intended for a person he believed to be "Amy Jones." ECF No. 1 at 4-5. Additionally, in another of the schemes identified in the Indictment, an individual fraudulently signed a withdrawal request for a transfer

7

from a TransAmerica annuity account in the name of the accountholder, E.R., and $140,000 was transferred from victim E.R.'s account to an Olujie-controlled account. Given that the charged conduct involves using fictitious identities of fake people and the actual identities of real people to entice victims into transferring funds into accounts actually controlled by Olujie and / or Norety, Olujie's possession of fraudulent passports in the names of multiple other individuals is intrinsic to the overall manner and means of the charged conspiracy. As such, the evidence is best viewed as intrinsic and should be admitted in the Government's case in chief.

### II. The Other Crimes Evidence is Alternatively Admissible To Prove Intent, Preparation, Plan, Knowledge, Identity, and Absence of Mistake or Accident

Alternatively, all of the evidence in categories (A) and (B), as well as category (C) of this motion are admissible under Rule 404(b) to prove, *inter alia*, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. As the D.C. Circuit has summarized:

> Federal Rule of Evidence 404(b) authorizes admission of "[e]vidence of other crimes, wrongs, or acts" provided it is offered not "to prove the character of a person in order to show action in conformity therewith" but rather "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

*United States v. Mahdi*, 598 F.3d 883, 891 (D.C. Cir. 2010).

The D.C. Circuit has adopted a two-pronged test for determining whether evidence of other bad acts is admissible under Rule 404(b). First, the evidence must be "probative of a material issue other than character." *United States v. Miller*, 895 F.2d 1431, 1435 (D.C. Cir. 1990); *see also United States v. Douglas*, 482 F.3d 591, 596 (D.C. Cir. 2007) ("A proper analysis under Rule 404(b) begins with the question of relevance: is the other crime or act relevant and, if so, relevant to something other than the defendant's character or propensity [to commit crime]? If yes, the evidence is admissible unless excluded under other rules of evidence such as Rule 403."). Second, the evidence is subject to the balancing test of Fed. R. Evid. 403, so that it is inadmissible only if

the prejudicial effect of admitting the evidence "substantially outweighs" its probative value. *Miller*, 895 F.2d at 1435; *see also United States v. Lerma-Plata*, 919 F. Supp. 2d 152, 156 (D.D.C. 2013) ("In addressing trial court determinations on the admissibility of 'other crimes' evidence under the Federal Rules of Evidence, this Circuit has employed a two-step mode of analysis. Under the first step, which addresses Rule 404(b), '[the court] must determine whether the evidence is relevant to a material issue other than character. If so, [the court] proceeds to the second inquiry,' under Federal Rule of Evidence 403, 'whether the probative value is substantially outweighed by the prejudice.'") *(quoting United States v. Burch,* 156 F.3d 1315, 1323 (D.C. Cir. 1998) (internal quotations omitted).

On the first step, it is significant that, "under Rule 404(b), *any* purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character." *Miller*, 895 F.2d at 1436 (emphasis in original). In other words, Rule 404(b) "is a rule of inclusion rather than exclusion" and it is "quite permissive, excluding evidence only if it is offered for the sole purpose of proving that a person's actions conformed to his or her character." *United States v. Long*, 328 F.3d 655, 660-61 (D.C. Cir. 2003) (internal quotation marks omitted); *see also Douglas*, 482 F.3d at 596, *Bowie*, 232 F.3d at 929-30, *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en banc), *United States v. Lawson*, 410 F.3d 735, 740 (D.C. Cir. 2005). The D.C. Circuit previously observed, "Only one series of evidential hypotheses is forbidden in criminal cases by Rule 404: a man who commits a crime probably has a defect of character; a man with such a defect of character is more likely than men generally to have committed the act in question." *Miller*, 895 F.2d at 1436 (quoting 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 404[8], at 404-52 (1989).

9

On the second step, the D.C. Circuit has emphasized that exclusion of otherwise relevant evidence is not appropriate if the evidence is merely prejudicial; the prejudice must be "unfair." *See United States v. Cassell*, 292 F.3d 788, 796 (D.C. Cir. 2002) ("Virtually all evidence is prejudicial or it isn't material. The prejudice must be unfair.") (internal quotation marks omitted). In close cases, the rule tilts toward admission. *See United States v. Johnson*, 802 F.2d 1459, 1464 (D.C. Cir. 1986) ("[T]he balance should generally be struck in favor of admission when the evidence indicates a close relationship to the offense charged.") (internal quotation marks omitted).

Further, the Government is entitled to introduce evidence pursuant to Rule 404(b) in its case in chief to anticipate a defendant's likely defense of lack of intent or knowledge. *See, e.g.*, *United States v. Brown*, 597 F.3d 399, 404 (D.C. Cir. 2010) (extrinsic evidence of defendant's "knowledge, motive, and the absence of mistake or accident" was admissible under Rule 404(b) "to show his specific intent to defraud"); *see also United States v. Inserra*, 34 F.3d 83, 90 (2d Cir. 1994) ("[Rule 404(b) other crimes evidence] is admissible during the Government's case-in-chief if it is apparent that the defendant will dispute that issue."), *United States v. Estabrook*, 774 F.2d 284, 289 (8th Cir. 1985) ("[W]here it is made clear at the outset of the trial that the defendant's principal defense is a lack of knowledge or intent, and thus the issue is unarguably in dispute, the government may take the defendant at his word and introduce the evidence in its case-in-chief"), *United States v. Lewis*, 759 F.2d 1316, 1349 n. 14 (8th Cir. 1985) ("It was not necessary for the government to await defendant's denial of intent or knowledge before introducing [Rule 404(b) other crimes] evidence; instead the government may anticipate the defense and introduce it in its case-in-chief").

Here, all of the evidence in categories (A), (B) and (C) of this motion are admissible for multiple purposes pursuant to Rule 404(b). *See Crowder*, 141 F.3d at 1208 (Rule 404(b) evidence

"will often have . . . multiple utility, showing at once intent, knowledge, motive, preparation and the like").

### (A) Category A (Additional Money Laundering) Is Admissible Pursuant to Rule 404(b)

As articulated *supra* in Section I, the information covered in Category A establishes the defendants' knowing participation in the conspiracy and knowledge that the funds were derived from specified unlawful activity. The previously articulated arguments for why the evidence is intrinsic to the charged offenses similarly apply to show that the evidence would be appropriately admitted under Rule 404(b) to prove, *inter alia*, the defendants' intent, motive, preparation, plan, knowledge, identity, and absence of mistake or accident. *See* Fed. R. Evid. 404(b)(2)

The defendants' involvement in multiple transactions which launder funds that were sent directly to the defendants' accounts from victims of fraud schemes, and not addressed to the defendants, show that the defendants had knowledge of the illicit nature of the funds. The defendants' robust and repeated activity shows that the laundering was not an accident or mistake, but instead was an intentional aspect of the plan. The participation in a broad range of transactions over an extended period of time will be instrumental in rebutting a likely defense that the defendants were unaware that the funds were the proceeds of unlawful activity.

Furthermore, information regarding the full scope of additional transactions helps to explain the background and timing of the conspiracy. As this court has recognized, "When a conspiracy is alleged, a legitimate purpose under Rule 404(b) for introducing 'extrinsic' acts is to provide background in order to show both association and how a criminal relationship developed." *United States v. Morrow*, No. 04-355 (CKK), 2005 U.S. Dist. LEXIS 23512, at *17 (D.D.C. Apr. 7, 2005) (unpublished). The Government, in a conspiracy prosecution, "is usually allowed considerable leeway in offering evidence of other offenses to inform the jury of the background of

the conspiracy charged, to complete the story of the crimes charged, and to explain to the jury how the illegal relationship between the participants in the crime developed." *United States v. Mathis*, 216 F.3d 18, 26 (D.C. Cir. 2000) (quoting *United States v. Williams*, 205 F.3d 23, 33-34 (2d Cir. 2000)); *see also United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996) ("One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case.") (citing *United States v. Lasanta*, 978 F.2d 1300, 1307-08 (2d Cir. 1992)), *United States v. Rosa*, 11 F.3d 315, 334 (2d Cir. 1993) ("We have repeatedly held that it is within the court's discretion to admit evidence of prior bad acts to inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators."), *United States v. Tse*, 375 F.3d 148, 155 (1st Cir. 2004) ("In a conspiracy case, the district court may admit evidence of other bad acts if they tend to suggest a criminal association between the alleged conspirators.").

(B) <u>Category B (Fraudulent Passports) Is Admissible Pursuant to Rule 404(b)</u>

The Government expects the defendants to claim they were unaware the laundered funds were tied to illegal activity. Such a defense is undercut by the evidence in Category B showing Olujie's direct involvement in trafficking fraudulent identities, where the unlawful activity underlying the charged money laundering includes defrauding victims by use of fictitious identities and / or fraudulent documentation belonging to real individuals. The evidence therefore is highly probative of the defendants' intent to commit money laundering. The information will further help to rebut any defense that the defendant moved the proceeds of crime by accident or due to a mistake or oversight.

(C) <u>Category C (Fraudulent Credit Cards) Is Admissible Pursuant to Rule 404(b)</u>

The evidence Olujie used credit cards which were issued in the names of victims whose identities had been stolen, and used the credit cards for personal purchases, to include rent, further establishes Olujie's knowledge, plan, intent and lack of mistake regarding the charged offenses. To the extent Olujie claims that he was unaware that his and Nortey's transactions laundered the proceeds of unlawful activity, and he was just blindly following instructions from others, his use of the credit cards establishes his willing involvement in the misappropriation of victim identities for personal gain. This evidence tends to show that Olujie was not mistaken, but instead intended to participate in a fraudulent money laundering conspiracy to enrich himself. Such evidence would also go hand-in-hand with intrinsic evidence the government intends to present in its case-in-chief that any time Olujie received funds from victims in his accounts, he typically kept approximately 5 to 10 percent of the total amount as his "commission" before transferring the rest to additional co-conspirators.

(D) <u>The Probative Value of the Evidence from Categories A–C Is Not Substantially Outweighed by Potential Prejudice</u>

The probative value of the evidence from Categories A, B and C is significant and is set forth in the sections above. The potential prejudice from the Rule 404(b) evidence in the categories does not "substantially outweigh" its probative value. The defendants are charged with an extensive money laundering conspiracy, wherein they allegedly laundered hundreds of thousands of dollars of proceeds from various fraud schemes. There is little risk that introduction of the additional evidence of money laundering and use of fraudulent or stolen identities will tend to inflame the jury or cause it to make a decision on an emotional basis. *See United States v. Ring*, 706 F.3d 460, 471 (D.C. Cir. 2014) (explaining that "unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one")

(internal quotation marks omitted). To the contrary, it will be helpful to the jury in understanding the defendants' schemes and establishing the requisite elements of the charged offenses.

Any concern regarding improper use of evidence admitted pursuant to Rule 404(b) can be appropriately addressed with a limiting instruction. *See United States v. Thorne*, No. 18-389 (BAH), 2020 U.S. Dist. LEXIS 4291, at *52-53 (D.D.C. Jan. 10, 2020) ("Limiting instructions will further 'guard the space between the permissible and impermissible' uses for the prior conviction evidence.") (quoting *United States v. Mitchell*, 49 F.3d 769, 777 (D.C. Cir. 1995)); *see also Crowder*, 141 F.3d at 1210 (considering "the effect of a limiting instruction" in conducting balancing under Rule 403) (cited in *Thorne*, 2020 U.S. Dist. LEXIS 4291, at *53).

## CONCLUSION

For the foregoing reasons, the government respectfully requests permission to introduce the above-described evidence as intrinsic evidence and/or other crimes evidence pursuant to Fed. R. Evid. 404(b).

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:  /s/ *S. Babu Kaza*
S. Babu Kaza, D.C. Bar No. 1033670
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Phone: (202) 803-1652
Fax: (202) 514-6113
*Counsel for the United States*

## CERTIFICATE OF SERVICE

      I hereby certify that, by filing the foregoing via the Court's Electronic Case Filing System, I caused a copy of the foregoing to be delivered electronically to counsel of record, on February 26, 2026.

      /s/ *S. Babu Kaza*
      S. Babu Kaza, D.C. Bar No. 1033670
      Assistant United States Attorney